UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

| | | | |
|---|---|---|---|
| TRACIE DILLINER,<br>and as the Administratrix of the Estate<br>of Logan James Dilliner, Deceased | ) ) ) ) | | |
| **Plaintiff,** | ) ) | | |
| v. | ) ) | Case No. ___2:19-cv-00415___ | |
| GENERAL MOTORS, LLC<br>    <u>Serve Registered Agent at:</u><br>    Corporation Service Company<br>    209 West Washington Street<br>    Charleston, WV 25302 | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** | |
| **Defendant.** | ) ) | | |

## COMPLAINT

**COMES NOW** Plaintiff, Tracie Dilliner, as the Administratrix of the Estate of Logan James Dilliner, deceased, by and through her counsel, Christopher J. Heavens of Heavens Law Firm, PLLC, and for her Complaint against Defendant General Motors, LLC, states as follows.

1.    Plaintiff Tracie Dilliner is a resident of Mineral Wells, West Virginia, and is the duly appointed Administratrix of the Estate of Logan James Dilliner, Deceased, as evidenced by the Letter of Administration attached hereto as Exhibit A.

2.    Plaintiff's decedent, Logan Dilliner, was, at all times relevant herein, a resident of Mineral Wells, West Virginia, and was killed as a result of a preventable post-collision fuel-fed fire resulting from a collision that occurred on August 30, 2017 in Parkersburg, Wood County, West Virginia.

3.    Plaintiff brings this action for wrongful death in her capacity as Administratrix of the Estate of Logan James Dilliner, Deceased.

1

4.      Defendant General Motors, LLC (hereinafter "GM") is a limited liability company organized and existing under the laws of the State of Delaware, with its principle place of business in Michigan.

5.      Defendant GM is registered to do business in the State of West Virginia, and may be served with process through its registered agent at the above-listed West Virginia address.

6.      Pursuant to 28 U.S.C. § 1332, this Court has subject-matter jurisdiction over this civil action, as the amount in controversy exceeds $75,000 and complete diversity of citizenship exists between the parties.

7.      Defendant GM is in the business of, *inter alia,* designing, engineering, manufacturing, distributing and selling vehicles under the brand names Chevrolet, Buick, GMC and Cadillac, including the 2004 GMC Sierra (VIN 1GTEK14V447246806) involved in the incident giving rise to Plaintiff's Complaint.

8.      Defendant GM regularly conducts business in West Virginia through its actions and those of its affiliated/subsidiary companies and agents.  Defendant GM causes its products to be marketed, distributed, sold and used within the State of West Virginia. As such, Defendant GM derives significant revenue from its activities and the sale of its products in the State of West Virginia. Through its actions, Defendant GM reasonably anticipates being haled into a West Virginia court and has consented to the personal jurisdiction of this Court.

9.      Defendant GM is subject to the general jurisdiction of this Court, in that it is and was conducting substantial business within West Virginia by maintaining continuous and systematic contacts with West Virginia, including but not limited to:

   a. GM maintains at least one place of business in West Virginia, the Martinsburg Parts Distribution Center located in Martinsburg, West Virginia;

      i.  The Martinsburg Parts Distribution Center encompasses approximately 404,000 square feet;

     ii.  The Martinsburg Parts Distribution Center employs approximately 112 workers;

    iii.  The Martinsburg Parts Distribution Center performs supply chain, logistics, warehousing and distribution for GM vehicles and associated parts;

b.  GM transports new GM vehicles on West Virginia highways and railways for distribution throughout West Virginia and the United States; and/or

c.  GM transports used GM vehicles on West Virginia highways and railways for distribution throughout West Virginia and the United States.

10.    Defendant GM is subject to the specific jurisdiction of this Court, in that:

a.  GM distributed and sold the subject 2004 GMC Sierra to a dealership in West Virginia for sale to the ultimate consumer;

b.  The subject 2004 GMC Sierra was originally sold and its title registered in the State of West Virginia;

c.  At the time of such sale and distribution by GM, the subject 2004 GMC Sierra was then in a defective and unreasonably dangerous condition, as set forth more fully below;

d.  The subject 2004 GMC Sierra was continuously registered and owned in West Virginia; and/or

e.  At the time of the subject motor vehicle accident, the subject 2004 GMC Sierra was licensed in the State of West Virginia, owned by a West Virginia resident and operated by a West Virginia resident.

11.      Defendant GM, through the acts of its employees or agents, has further submitted itself to the jurisdiction of this Court pursuant to West Virginia's long-arm statute, W. Va. Code § 56-3-33, in that it transacted business in this state, committed a tortious act in this state and/or caused tortious injury in this state by an act or omission outside this state while regularly doing business, engaging in a persistent course of conduct and deriving substantial revenue from goods used in this state.

12.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events giving rise to this claim occurred within this judicial district, in that the motor vehicle accident that is the subject of this action occurred in Wood County, West Virginia, a county within this District.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

13.      Plaintiff adopts and incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

14.      At approximately 5:44 a.m. on August 30, 2017, at or near milepost 175.6 of northbound Interstate 77 in Parkersburg, Wood County, West Virginia, Darryl Barker was driving a 2015 Freightliner semi-truck, pulling a 2013 GDAN semi-trailer.

15.      At or around that same time, date and location, Plaintiff's decedent, Logan Dilliner, was driving a 2004 GMC Sierra (VIN:1GTEK14V44Z246806) (hereinafter the "Subject Vehicle") in the northbound lanes of Interstate 77.

16.      At or around that same time, date and location, the front right of the Subject Vehicle came into contact with the rear left corner of the semi-trailer, causing the Subject Vehicle to enter a clockwise yaw before overturning and coming to rest on its roof in a ditch on the right side of the roadway.

17.     As the Subject Vehicle rolled over, the fuel tank straps failed to properly restrain the fuel tank, and instead, allowed the fuel tank to move and interact with the underside of the Subject Vehicle, resulting in the immediate release of gasoline, leading to a quick and immense post-collision fuel-fed fire (hereinafter the "Subject Fire").

18.     Plaintiff's decedent, James Dilliner, who was 21 years old at the time of the subject motor vehicle accident, was unable to remove himself from the Subject Vehicle, causing him to consciously suffer an agonizingly painful death as a result of exposure to the flames, heat and smoke-filled air resulting from the Subject Fire.

## COUNT I – STRICT LIABILITY

19.     Plaintiff adopts and incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

20.     At all times relevant hereto, Defendant GM was actively engaged in the business of designing, manufacturing, marketing, warranting, distributing and selling GMC Sierra vehicles.

21.     Prior to the subject motor vehicle accident, Defendant GM designed, manufactured, assembled, inspected, tested, distributed, placed into the stream of commerce and sold the Subject Vehicle in the normal course of its business for use by the general public.

22.     At the time the Subject Vehicle left the control of Defendant GM, the Subject Vehicle was defective and unreasonably dangerous when put to reasonably anticipated use.

23.     The Subject Vehicle was defective and unreasonably dangerous due to its lack of reasonable and necessary fuel system integrity and protection from fire propagation, including, but not limited to, the following:

     a.  The fuel system of the Subject Vehicle was not crashworthy in a reasonably foreseeable crash;

b.  The use of fuel tank mounting straps/brackets that can be dislodged in a reasonably foreseeable collision;

c.  The use of fuel tank mounting straps/brackets that require movement only on a single plane to become dislodged;

d.  The use of fuel tank mounting straps/brackets that do not employ any method of permanent fixation (i.e. bolts, locking pins, etc.);

e.  The use of a fuel tank mounting system wherein the fuel tank does not serve to provide a barrier to the dislodgment of the fuel tanking mounting straps from the brackets;

f.  The absence of a skid plate or other shielding mechanism to secure the fuel tank in its designed location;

g.  A fuel tank without a check valve or other mechanism to prevent the release of gasoline in the event of fuel filler neck dislodgement;

h.  A fuel supply and distribution system which lacked mechanisms to prevent the release of gasoline in the event of displacement of the fuel tank;

i.  A cabin vent located directly behind the driver's seat and ahead of the as-designed location for the fuel tank, that allowed the propagation of the fire into the occupant compartment;

j.  The design and manufacture of the fuel system failed to incorporate alternative designs or devices to prevent or mitigate a loss of fuel system integrity in a reasonably foreseeable collision;

k.  The design and manufacture of the cabin failed to incorporate alternative designs or devices to prevent or mitigate fire propagation in a reasonably foreseeable collision;

l.  The vehicle lacked adequate testing and inspection before it was distributed and sold so as to ensure it was reasonably suited for its intended purpose and provided adequate fuel system integrity and resistance to fire propagation in a reasonably foreseeable collision;

m.  The vehicle lacked adequate warnings and/or other proper notice to alert users regarding the hazardous conditions created by the fuel system and cabin's lack of resistance to fire propagation, as well as the risk of injury from such hazardous conditions; and/or

n.  In other respects currently unknown, but as may be discovered through the course of discovery herein.

24.     The Subject Vehicle was expected to and did reach the hands of the consumer, including Logan Dilliner, without substantial change or modification, and was in substantially the same condition on the day of the subject motor vehicle accident as it was when it left the possession and control of Defendant GM.

25.     The Subject Vehicle was used by Logan Dilliner in a reasonably anticipated manner.

26.     Defendant GM knew or should have known that the Subject Vehicle would be used without inspection for defects and represented that the Subject Vehicle could be safely used for the ordinary purposes for which it was intended.

27.     As a direct and proximate result of the defective and unreasonable dangerous condition of the Subject Vehicle, Logan Dilliner sustained severe thermal and smoke inhalation injuries, resulting in his death after great pain and suffering.

28.     As a direct and proximate result of Defendant GM's negligent acts and/or omissions, Logan Dilliner sustained damages, for which Plaintiff is authorized to recover pursuant to W. Va. Code § 55-7-8A, including the damages sustained by Logan Dilliner between the time of the subject motor vehicle accident and his ultimate death, including, but not limited to damages for conscious pain and suffering.

## COUNT II – NEGLIGENCE

29.     Plaintiff adopts and incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

30.     At all times relevant hereto, Defendant GM was actively engaged in the business of designing, manufacturing, marketing, warranting, distributing and selling GMC Sierra vehicles.

31.     Prior to the subject motor vehicle accident, Defendant GM designed, manufactured, assembled, inspected, tested, distributed, placed into the stream of commerce and sold the Subject Vehicle in the normal course of its business for use by the general public.

32.     As a motor vehicle designer, manufacturer, distributor and seller, Defendant GM knew that users of their vehicles could be involved in motor vehicle collisions, and the extent of their injuries would frequently be determined by the design and construction of their vehicles, including the Subject Vehicle in this case.

33.     Defendant GM had a duty to the general public, including Logan Dilliner, to exercise reasonable care to design, manufacture, assemble, inspect, test, market, distribute, place into the stream of commerce and sell reasonably safe vehicles so as not to subject consumers to an unreasonable risk of harm.

34.     At all times relevant hereto, Defendant GM owed to the general public, including Logan Dilliner, the duty to design, manufacture and sell vehicles that were not defective and/or unreasonably dangerous during a foreseeable collision.

35.     Defendant GM breached its duty to exercise reasonable care in the design, testing, manufacture and sale of the Subject Vehicle in multiple respects, *including, but not limited to,* the following:

  a.  The fuel system of the Subject Vehicle was not crashworthy in a reasonably foreseeable crash;

  b.  The use of fuel tank mounting straps/brackets that can be dislodged in a reasonably foreseeable collision;

  c.  The use of fuel tank mounting straps/brackets that require movement only on a single plane to become dislodged;

  d.  The use of fuel tank mounting straps/brackets that do not employ any method of permanent fixation (i.e. bolts, locking pins, etc.);

  e.  The use of a fuel tank mounting system wherein the fuel tank does not serve to provide a barrier to the dislodgment of the fuel tanking mounting straps from the brackets;

  f.  The absence of a skid plate or other shielding mechanism to secure the fuel tank in its designed location;

g.   A fuel tank without a check valve or other mechanism to prevent the release of gasoline in the event of fuel filler neck dislodgement;

h.   A fuel supply and distribution system which lacked mechanisms to prevent the release of gasoline in the event of displacement of the fuel tank;

i.   A cabin vent located directly behind the driver's seat and ahead of the as-designed location for the fuel tank, that allowed the propagation of the fire into the occupant compartment;

j.   The design and manufacture of the fuel system failed to incorporate alternative designs or devices to prevent or mitigate a loss of fuel system integrity in a reasonably foreseeable collision;

k.   The design and manufacture of the cabin failed to incorporate alternative designs or devices to prevent or mitigate fire propagation in a reasonably foreseeable collision;

l.   The vehicle lacked adequate testing and inspection before it was distributed and sold so as to ensure it was reasonably suited for its intended purpose and provided adequate fuel system integrity and resistance to fire propagation in a reasonably foreseeable collision;

m.   The vehicle lacked adequate warnings and/or other proper notice to alert users regarding the hazardous conditions created by the fuel system and cabin's lack of resistance to fire propagation, as well as the risk of injury from such hazardous conditions; and/or

n.   In other respects currently unknown, but as may be discovered through the course of discovery herein.

36.     The Subject Vehicle was expected to and did reach the hands of the consumer, including Logan Dilliner, without substantial change or modification, and was in substantially the same condition on the day of the subject motor vehicle accident as it was when it left the possession and control of Defendant GM.

37.     The Subject Vehicle was used by Logan Dilliner in a reasonably anticipated manner.

38.     Defendant GM knew or should have known that the Subject Vehicle would be used without inspection for defects and represented that the Subject Vehicle could be safely used for the ordinary purposes for which it was intended.

39.     As a direct and proximate result of Defendant GM's negligent acts and/or omissions, Logan Dilliner sustained severe thermal and smoke inhalation injuries, resulting in his death after great pain and suffering.

40.     As a direct and proximate result of Defendant GM's negligent acts and/or omissions, Logan Dilliner sustained damages, for which Plaintiff is authorized to recover pursuant to W. Va. Code § 55-7-8A, including the damages sustained by Logan Dilliner between the time of the subject motor vehicle accident and his ultimate death, including, but not limited to damages for conscious pain and suffering.

## COUNT III – WRONGFUL DEATH OF LOGAN DILLINER

41.     Plaintiff adopts and incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

42.     As a direct, proximate and foreseeable result of the defective and unreasonably dangerous condition of the Subject Vehicle and the negligent acts and omissions of Defendant GM, Logan Dilliner sustained severe thermal and smoke inhalation injuries, resulting in his death.

43.     Plaintiff is therefore entitled to recover from Defendant GM all damages pursuant to W. Va. Code § 55-7-6, including, but not limited to damages for:

     a.   Sorrow, mental anguish and solace, including society, companionship, comfort, guidance, kindly offices and advice of Logan Dilliner;

     b.   Compensation for reasonably expected loss of:

         i.   Income of Logan Dilliner; and

         ii.   Services, protection, care and assistance provided by Logan Dilliner;

     c.   Reasonable funeral expenses; and

     d.   Any other damages Plaintiff may be legally or equitably entitled to.

## COUNT IV – PUNITIVE/EXEMPLARY DAMAGES

44.     Plaintiff adopts and incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

45.     For the reasons set forth above, the acts and/or omissions of Defendant GM constituted gross negligence and malice evidencing a willful, wanton and/or reckless disregard for the safety of the general public and users of GM vehicles, including Logan Dilliner.

46.     As a direct and proximate result of Defendant GM's willful, wanton and/or reckless disregard for the safety of the general public and users of GM vehicles, Logan Dilliner sustained severe thermal and smoke inhalation injuries, resulting in his death after great pain and suffering.

47.     Defendant GM is liable to Plaintiff for punitive damages, with said sum to be determined by the jury in its discretion and good judgment, in an amount which will deter similar behavior by Defendant GM in the future and in an amount sufficient to punish Defendant and to deter future like conduct.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby requests a jury trial on all issues so triable stated herein.

**WHEREFORE** Plaintiff Tracie Dilliner, as the Personal Representative of the Estate of Logan James Dilliner, deceased, prays this Court enter judgment against Defendant General Motors, LLC for a reasonable sum of damages as will fairly and justly compensate Plaintiff, the Estate of Logan James Dilliner and the statutory beneficiaries, for punitive damages in such sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct, together with interest and costs herein incurred, and for such other and further relief as the Court may deem just and proper under the circumstances.

Respectfully submitted,

12

                                            s// Christopher J.  Heavens
                                          Of Counsel for the Plaintiff

Christopher J. Heavens (WV Bar No. 5776)
**HEAVENS LAW FIRM, PLLC**
2438 Kanawha Boulevard East
Charleston, West Virginia 25311
Phone:          304-346-0464
Fax:             304-345-5775
e-mail:          chris@heavenslawfirm.com