IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TRACIE DILLINER, et al.,

        Plaintiffs,

v.　　　　　　　　　　　　　　　　　CIVIL ACTION NO. 2:19-cv-00415

GENERAL MOTORS, LLC

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiff's Renewed Unopposed Motion for Leave to File Settlement Documents Under Seal [ECF No. 54]. For the reasons explained herein, the Motion is **DENIED IN PART** and **GRANTED IN PART**.

I.　　FACTUAL BACKGROUND

Plaintiff Tracie Dilliner, as Administratrix of the Estate of Logan James Dilliner, filed this action alleging strict liability, negligence, and wrongful death. Plaintiff's decedent is her son, Logan Dilliner. Logan Dilliner died in a motor vehicle accident on August 30, 2017, on I-77 in Wood County, West Virginia. [ECF No. 1 at p.14]. The personal representative alleges that the decedent's death was caused by a manufacturing defect in a vehicle made by General Motors. She complains that a 2004 GMC Sierra driven by her son collided with a semi-trailer and that the vehicle's

defectively-manufactured fuel tank straps failed. She complains that that manufacturing defect caused a gasoline leak and fire that killed the decedent.

The parties conducted a mediation on September 4, 2020 and arrived at a settlement. [ECF No. 50]. The Plaintiff filed a Petition for Settlement Authority [ECF No. 51] accompanied by an Unopposed Motion for Leave to File Settlement Documents Under Seal. [ECF No. 52]. I denied that motion to seal and ordered the parties to submit proposed redactions to the agreement and further justification for sealing. [ECF No. 53]. After having reviewed those redactions, I ordered the Parties to file the unredacted versions of these documents under conditional seal so that I could better understand the nature of the settlement, what I was being asked to approve, and what I was being asked to seal. [ECF No. 55]. The parties timely filed those unredacted materials under conditional seal. [ECF No. 56].

## II. RENEWED MOTION TO FILE UNDER SEAL

The parties have submitted copies of their Settlement Term Sheet; Complete Release, Indemnity Confidentiality and Settlement Agreement; and affidavits executed by the beneficiaries, Tracie Dilliner (administratrix), Bryan Dilliner, and Chase Dilliner. [ECF No. 54, Exs. A–E]. The parties seek my leave to file unredacted copies of these documents under permanent seal in order to approve their settlement agreement as required by West Virginia's Wrongful Death statutes, W. Va. Code § 55-7-5 *et seq*; *York v. Prop. & Cas. Ins. Co. of Hartford,* No. 2:12-CV-06582, 2013 U.S. Dist. LEXIS 143044, 2013 WL 5504435, at *5 (S.D. W. Va. Oct. 3, 2013), aff'd, 592 F. App'x 148 (4th Cir. 2014). In the alternative, the parties ask me to review the unredacted documents *in camera*. The parties state that confidentiality of the final

settlement amount is a material term of their settlement agreement; that the common law right of public access to judicial records is overcome by the parties' privacy interests in reaching a confidential settlement; that there are no First Amendment implications in their agreement and that, if there were, such implications would be outweighed; that public policy favors the settlement of suit; and that confidential settlements are a tradition in the United States. [ECF No. 54 at 3–6].

### III. APPLICABLE LAW

The Local Rules of Procedure for the Southern District of West Virginia provide that, "[t]he rule requiring public inspection of court documents is necessary to allow interested parties to judge the court's work product in the cases assigned to it. The rule may be abrogated only in exceptional circumstances." Local R. P. 26.4(b)(1). In reviewing a motion to seal, I start with the proposition that the common law presumes that the public is afforded the right to "inspect and copy 'all judicial records and documents.'" *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). The presumption of access may be rebutted "if countervailing interests heavily outweigh the public interests in access." *Id.* (citation omitted).

I have previously granted leave to file settlement documents under seal in the FMLA context. *See Saunders v. Champ Sports, Inc.*, No. 2:07-cv-00655, 2008 U.S. Dist. LEXIS 99150, 2008 WL 5142393, at *1 (S.D. W. Va. Dec. 8, 2008). In *Saunders*, I said that "[c]onfidentiality is necessary in settlement discussions and agreements

to encourage candor and participation in the negotiations by all parties." *Id* at *2. I also noted that I was more inclined to allow sealing where the parties were compelled by law to seek my approval to settle where in other instances, they would be free to reach any agreement between themselves without judicial involvement. *Id.*

West Virginia Code § 55-7-7 mandates court approval—and thus publication—of wrongful death settlements. "It is essentially impossible for the public to judge the approval process in a given wrongful death case . . . if the terms of the settlement . . . are not spread upon the public record." See *Haynes v. Grebinnyk*, No. 2:17-cv-04017 2018 U.S. Dist. LEXIS 57707, at *4 (S.D. W. Va. Apr. 3, 2018). However, the primary purpose of the wrongful death statute is not to arm the public with settlement information but to protect the beneficiaries of the decedent. "In instances where the only beneficiaries to such a compromise are adults, the statute requires that such agreements be presented to the circuit court for approval. W. Va. Code § 55–7–7. Although the role of the trial court in those wrongful death cases involving only adult beneficiaries, all of whom have consented to the terms of the settlement agreement, is necessarily limited, the trial court must still ascertain that each potential beneficiary has been included in the agreement and make inquiry regarding the presence of any factor that could potentially serve to invalidate the agreement." *Estate of Postlewait v. Ohio Valley Med. Ctr., Inc.*, 591 S.E.2d 226 (W. Va. 2003).

In a private settlement negotiation, parties are free to bind themselves to whatever terms they like. Public policy "favors private settlement of disputes." *Crandell v. United States*, 703 F.2d 74, 75 (4th Cir. 1983). However, whether because

4

of statutory requirement or desire for efficiency, parties sometimes seek judicial assistance or approval. In some cases, the secrecy of the settlement is a material term of the agreement. In those instances, the parties might ask the trial judge to participate in preserving the secrecy of the terms through the use of sealing, closed hearings, and protective orders. The aim of each mechanism is to restrict public access to and awareness of the terms or even the existence of the settlement.

Open and transparent court processes are vital features of a functioning democracy. That idea is hardly more important than when the court is confronted with a controversy that bears upon the public health and safety. In those cases, the function of the district court is not merely to serve as a neutral arbiter assisting the settling parties in reaching an agreement. Rather, civil litigation— especially in the products liability context—is a public good.[1] Confidentiality orders have played a part in lawsuits involving defective products, toxic torts, clergy sexual abuse, and financial fraud.[2] Critics have noted that too often, courts have been overly zealous to approve of confidentiality measures when it comes to litigation that is of vital concern to the public. "Public access educates the public about the judicial system in general and its workings in a particular case."[3] Some advocate that courts carefully account for the relevant public health and safety ramifications of allowing for secret settlements:

> As a pragmatic matter, before refusing the parties' confidentiality request on this ground, a court must determine that a safety risk

---

[1] Jack B. Weinstein & Catherine Wimberly, *Secrecy in Law and Science*, 23 Cardozo L. Rev. 1 (2001).
[2] Laurie Kratky Dore, *Public Courts Versus Private Justice: It's Time to Let Some Sunshine in on Alternative Dispute Resolution*, 81 Chi.-Kent L. Rev. 463, 464 (2006).
[3] *Id.*

5

exists, an inquiry arguably reaching the merits of the controversy. Whether a court possesses sufficient information to make this assessment when presented with a settlement depends, among other things, on the maturity of the litigation and the amount of discovery that has been produced, filed, or otherwise made known to the court. The effort, time, and cost involved in making additional investigation into this issue may well undercut the very benefits that settlement is meant to offer.

Likewise, 'uncertainties as to what is and what is not a danger to public health or safety' further complicate the inquiry. Some types of cases obviously implicate public health, welfare, and safety concerns more than others. Product liability litigation alleging a design defect in a standard product that is marketed on a national or international scale like that involved in the Firestone tire litigation presents one such example Environmental hazards that affect broader communities or fraudulent securities and financial schemes that potentially harm whole markets illustrate others. A court's approval or sealing of a confidential settlement in such cases may deny similarly situated plaintiffs, potential victims, regulatory authorities, or the media timely access to information regarding a continuing hazard.[4]

Accordingly, many state legislatures have reformed their rules of civil procedure to encourage greater transparency.[5]

---

[4] Laurie Kratky Dore, *Settlement, Secrecy, and Judicial Discretion: South Carolina's New Rules Governing the Sealing of Settlements*, 55 S.C. L. Rev. 791, 811 (2004).

[5] Dore, *supra* note 2, at fn. 64 ("See e.g., Cal. App. R. 12.5; Cal. Trial & Pretrial R. 243.1-243.4 (prescribing procedures for sealing of court records in trial and appellate courts); Conn. R. Super. Ct. 11-20A (prohibiting sealing of materials on file or lodged with the court in connection with a court proceeding absent notice to interested parties and affirmative trial court findings); Del. Super. Ct. R. Civ. P. 5(g); Del. R. Chancery Ct. 5(g); Del. Sup. Ct. R. 9(bb) (requiring judicial determination that good cause exists for continued sealing of court records); Ga. Uniform R. Super. Ct. 21 (establishing procedural and substantive requirements for sealing of judicial records); Idaho Ct. Admin. R. 32(f) (requiring that court make factual finding "as to whether the interest in privacy or public disclosure predominates" before sealing judicial records in least restrictive fashion); Ind. Code Ann. 5-14-3-5.5 (West 2002) (requiring specific balancing of interests, findings of fact, and conclusions of law before sealing "judicial public record"); La. Code Civ. Proc. Ann. art. 1426 (C)-(E) (2005) (prohibiting sealing of records if information relates to a public hazard); Mass. Unif. R. Impoundment P. 1, 7 (directing that the court consider enumerated "relevant factors" in deciding to impound papers, documents, and exhibits); Mich. Ct. R. 8.119(F)(4) (limiting the court's discretion to seal "documents and records of any nature that are filed with the clerk"); Unif. R. N.Y. State Trial Cts. 216.01 (requiring written finding of good cause and consideration of public interest before sealing court records); S.C. R. Civ. P. 41.1 (establishing balancing factors to guide courts in deciding whether to seal documents); Tex. R. Civ. P. 76a (creating presumption of public access to "court records"). For an example of recent local federal

In any case, the party seeking to conceal the amount or terms of a settlement that requires judicial approval bears the burden of "showing some significant interest that outweighs the presumption" of public access. *Va. Dep't of State Police*, 386 F.3d at 575 (citation omitted). When a party fails to "offer[] any reason for secrecy except that they have a confidentiality agreement," the presumption cannot be overcome. *Goesel v. Boley Intern. (H.K.) Ltd.*, 738 F.3d 831, 835 (7th Cir. 2013). Where there is "potential public value to disclosing settlement terms . . . parties *have* to give the judge a reason for not disclosing them" *Id.* (emphasis in original).

## IV. ANALYSIS

In determining whether to afford the parties a measure of confidentiality in filing their settlement terms with the court, I must determine whether the interests of the parties in maintaining confidentiality heavily outweigh the presumption of public access. I also consider whether the parties have been compelled to seek court approval of their bargain and the purpose of the statute that so requires my approval.

### a. *The Public's Right to Access the Material Terms of the Settlement Agreement*

The Plaintiff alleges that faulty manufacturing or a defective component was the cause of her son's death in a gruesome auto accident. If the allegations contained within the complaint were proven to be true at trial, the nature of General Motors' liability would be a vital matter of public health and safety. Having carefully reviewed the complaint, the renewed motion to seal, and the settlement agreement,

---

rules imposing similar restrictions on the sealing of judicial records, see, e.g., D.N.J. Local Civ. R. 5.3 (adopted 2005; governing motions to seal or otherwise restrict public access); D.S.C. Local Civ. R. 5.03(A) (adopted 2001; providing mandatory procedures for filing of documents under seal)").

I find that the parties have not rebutted the presumption of public access to the terms and material portions of the settlement that relate to the nature of this lawsuit. In fact, they "haven't even tried." Instead, the parties have not "offered any reason for secrecy except that they have a confidentiality agreement. Obviously that's insufficient." *Goesel v. Boley Intern. (H.K.) Ltd.*, 738 F.3d 831, 835 (7th Cir. 2013).

I am aware of the cost that the parties endure when litigating claims in an open and public forum that is funded by the people of the United States. Those disadvantages have spurred the rise of arbitration, private mediation, and other forms of alternative dispute resolution. The public nature of this chosen forum, however, demands the integrity of its operation. I cannot, in light of the nature of the allegations contained in the complaint and the parties' lack of arguments in favor of sealing, find that that the parties' interest in the confidentiality of these settlement talks outweighs the public's right to be informed and apprised of a settlement involving a potentially dangerous or defective consumer product. As it pertains to the terms and material provisions of the settlement documents, the motion to seal is **DENIED**.

### b. *The Interest of Privacy in the Compulsory Approval Context*

Having denied the petition to seal the terms of the agreement, I turn now to the *amount* of the agreement. While the presumption of public access weighs against sealing, I am also keenly aware of three factors: **(i)** that the public policy favors the speedy settlement of suits; **(ii)** that this settlement is, in part, conditioned on secrecy and; **(iii)** the fact that the parties are compelled by statute to seek my approval of

their agreement. As I explained, W. Va. Code § 55-7-5 *et. seq.*, compels court approval for the settlement of wrongful death claims because the West Virginia legislature wanted to ensure the fair transfer of funds to beneficiaries. If this were any other type of claim—up to and including grievous personal injury—the parties would be entitled to bargain for absolute secrecy and would not have to seek my approval of that bargain.

In *Saunders*, Fourth Circuit case law compelled the parties to seek my approval of the Plaintiff's FMLA waiver contained in a confidential settlement agreement. 2008 WL 5142393 at *2. In granting the accompanying motion to seal, I contrasted the parties' situation with that of other cases in which sealing was disallowed when the parties voluntarily filed their agreements with the court. *See DBI Architects, P.C. v. Am. Exp. Travel Related Svcs. Co.,* 462 F. Supp. 2d 1, 7–8 (D.D.C. 2006) (denying motion to seal in a case where the court did not need to know the terms of the settlement agreement and parties could file redacted copy); *Stephens,* 422 F. Supp. 2d at 643-44 (finding that, where the defendants elected to file the settlement agreement with the court, they had a diminished interest in its confidentiality).

Here, the parties are compelled by statute to file their agreement with the court, but the situation is not wholly comparable to *Saunders*. An FMLA waiver is a far different type of settlement than a wrongful death claim that alleges a faulty consumer product. While both cases require my approval, this death case calls for me to balance the compulsory review of settlement (which I held in *Saunders* to be a

9

factor that favored sealing the record) with the fact that the nature of this dispute is of vital interest to public health and safety.

This case is troubling. On the one hand, "confidential settlements work to the detriment of the public by delaying awareness of underlying liability issues." Ben Depoorter, *Law in the Shadow of Bargaining: The Feedback Effect of Civil Settlements*, 95 *Cornell L. Rev.* 957, 974 (2010). And in a case like this one, where the plaintiff alleges a deadly manufacturing defect, public awareness of the underlying liability issue plays a key role in public safety. Allowing parties, manufacturers and victims alike, to conceal the amount of a settlement in such a case distorts the public's view of the seriousness of the defect. That is, "the tortfeasor's costs of settling are usually lower than the costs imposed on other victims who remain unaware of the cause of harm." *Id.* Manufacturers may pay, and victims may be willing to accept, more money "to bury those facts that are most likely to induce liability in confidential [settlement] agreements." *Id.* I am concerned that the court is being asked to play a role in—and approve of—such secrecy. On the other hand, I am mindful that I would not be required to review this settlement at all if the victim had suffered any fate less than death. As I have explained, the court's role here, under W. Va. Code § 55-7-5, is to ensure that all beneficiaries are identified and that any distribution of the settlement among them is proper. While ensuring public safety is always within the purview of the courts, the West Virginia legislature did not intend for courts reviewing wrongful death settlements to approve or deny them on the basis

of public safety, or to otherwise consider the settlement amount except as it pertains to distribution among beneficiaries.

In my view, the entire settlement agreement, including the amount, ought to be made public. However, where the court's involvement in the settlement at all is for such a limited purpose as in this case, judicial restraint is proper. I will therefore permit the parties to redact only the *amount* of the settlement payment and any personal identifying information contained in the agreement.

## V. CONCLUSION

Accordingly, I order that the Renewed Unopposed Motion for Leave to File Settlement Documents Under Seal [ECF No. 54] be **DENIED** as to the material terms of the agreement but **GRANTED** as to the final settlement dollar amount. The request for an *in camera* hearing is also **DENIED**. The documents filed under conditional seal [ECF No. 56] are to remain sealed. The parties may submit any proposed settlement agreement in a format consistent with the foregoing opinion.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: February 19, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE